## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **JIMMY BREEDING,** | : | |
| **DANIEL A. LEBLANC, LON** | : | **Civil Action File No.** |
| **D. SHEETZ, DENNIS G.** | : | |
| **WILSON, and WILLIAM** | : | |
| **YOUNG,** | : | |
| | : | |
|   **Plaintiffs,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **AMERICAN HERITAGE** | : | |
| **GUN RANGE and TRAINING** | : | |
| **CENTER, LLC, OTS** | : | |
| **CAPITAL PARTNERS, DAN** | : | |
| **FORT, and SHERRI FORT,** | : | |
| | : | |
|   **Defendants.** | : | |

---

## COMPLAINT

---

Pursuant to Fed. R. Civ. P. 7, Jimmy Breeding ("Breeding"), Daniel A. LeBlanc ("LeBlanc"), Lon D. Sheetz ("Sheetz"), Dennis G. Wilson ("Wilson") and William Young ("Young") (collectively, "Plaintiffs"), bring this Complaint against Defendants American Heritage Gun Range and Training Center, LLC ("American Heritage"), OTS Capital Partners ("OTS"), Dan Fort, and Sherri Fort (collectively "Defendants") and show the Court as follows:

1. **INTRODUCTION**

1.

This is an FLSA case. Defendants are Plaintiffs' employer. Defendants have misclassified Plaintiffs as independent contractors; failed to compensate them at or above the FLSA minimum wage for each hour worked; and failed to pay them at one-and-one-half times their regular rates for work performed in excess of forty (40) hours in each workweek during their employment with Defendants.

2.

Plaintiffs further assert claims against Defendants American Heritage and OTS for their fraudulent filing of IRS Forms 1099 and fraudulent IRS Forms W2 for the years 2011, 2012, 2013, 2014, and 2015 in violation of 26 U.S.C. § 7434.

3.

In addition to their federal causes of action, Plaintiffs assert pendent state law claims which arise out of the same set of operating facts as their federal claims. These are (1) breach of contract, (2) quantum meruit and (3) promissory estoppel.

2. **JURISDICTION AND VENUE**

4.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA §16(b), 29 U.S.C. § 216(b), 28 U. S.C. § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

5.

This Court has supplemental jurisdiction over Plaintiffs' state law claims set forth herein arising under Georgia law in accord with 28 U.S.C. §1367 because the state law claims are so related to the federal claims that they form part of the same case or controversy.

6.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because American Heritage and OTS are located in this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

3. **THE PARTIES**

7.

Breeding resides in Henry County, Georgia.

8.

American Heritage has employed Breeding as a salesman and range safety officer in McDonough, Georgia from April 1, 2013 through the date of filing of the instant action.

9.

At all times material hereto, Breeding has been an "employee" of American Heritage as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

10.

At all times material hereto, American Heritage has been an "employer" of Breeding as defined in FLSA § 3(d), 29 U.S.C. §203(d).

11.

LeBlanc resides in Henry County, Georgia.

12.

American Heritage has employed LeBlanc as a maintenance man in McDonough, Georgia from August 2013 through the date of filing of the within action.

13.

At all times material hereto, LeBlanc has been an "employee" of American Heritage as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

14.

At all times material hereto, American Heritage has been an "employer" of LeBlanc as defined in FLSA § 3(d), 29 U.S.C. §203(d).

15.

Sheetz resides in Henry County, Georgia.

16.

American Heritage employed Sheetz as a range safety officer and firearms coach in McDonough, Georgia from December 19, 2015 through April 22, 2016.

17.

At all times material hereto, Sheetz has been an "employee" of American Heritage as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

18.

At all times material hereto, American Heritage has been an "employer" of Sheetz as defined in FLSA § 3(d), 29 U.S.C. §203(d).

19.

Wilson resides in Henry County, Georgia.

20.

American Heritage has employed Wilson as a salesman and range coordinator in McDonough, Georgia from January 2013 through the date of filing of the instant action.

21.

At all times material hereto, Wilson has been an "employee" of American Heritage as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

22.

At all times material hereto, American Heritage has been an "employer" of Wilson as defined in FLSA § 3(d), 29 U.S.C. §203(d).

23.

Young resides in Henry County, Georgia.

24.

American Heritage has employed Young as an ATF compliance officer in McDonough, Georgia from 2011 through the date of filing of the within action.

25.

At all times material hereto, Young has been an "employee" of American Heritage as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

26.

At all times material hereto, American Heritage has been an "employer" of Young as defined in FLSA § 3(d), 29 U.S.C. §203(d).

27.

American Heritage is a corporation organized under the laws of the State of Georgia.

28.

American Heritage is subject to the personal jurisdiction of this Court.

29.

American Heritage may be served with process through its registered agent Dan Fort at 775 Highway 42 North, McDonough, Georgia 30253.

30.

OTS has employed Breeding as a salesman and range safety officer in McDonough, Georgia from April 1, 2013 through the date of filing of the within action.

31.

At all times material hereto, Breeding has been an "employee" of OTS as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

32.

At all times material hereto, OTS has been an "employer" of Breeding as defined in FLSA § 3(d), 29 U.S.C. §203(d).

33.

OTS has employed LeBlanc as a maintenance man in McDonough, Georgia from August 2013 through the date of filing of the within action.

34.

At all times material hereto, LeBlanc has been an "employee" of OTS as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

35.

At all times material hereto, OTS has been an "employer" of LeBlanc as defined in FLSA § 3(d), 29 U.S.C. §203(d).

36.

OTS employed Sheetz as a range safety officer and firearms coach in McDonough, Georgia from December 19, 2015 through April 22, 2016.

37.

At all times material hereto, Sheetz has been an "employee" of OTS as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

38.

At all times material hereto, OTS has been an "employer" of Sheetz as defined in FLSA § 3(d), 29 U.S.C. §203(d)

39.

OTS has employed Wilson as a salesman and range coordinator in McDonough, Georgia from January 2013 through the date of filing of the instant action.

40.

At all times material hereto, Wilson has been an "employee" of OTS as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

41.

At all times material hereto, OTS has been an "employer" of Wilson as defined in FLSA § 3(d), 29 U.S.C. §203(d).

42.

OTS has employed Young as an ATF compliance officer in McDonough, Georgia from 2011 through the date of filing of the within action.

43.

At all times material hereto, Young has been an "employee" of OTS as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

44.

At all times material hereto, OTS has been an "employer" of Young as defined in FLSA § 3(d), 29 U.S.C. §203(d).

45.

OTS is a corporation organized under the laws of the State of Georgia.

46.

OTS is subject to the personal jurisdiction of this Court.

47.

OTS may be served with process through its registered agent Dan Forts at 775 Highway 42 North, McDonough, Georgia 30253.

48.

Dan Fort resides within Henry County, Georgia.

49.

At all times material hereto, Plaintiffs have been "employees" of Dan Fort as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

50.

At all times material hereto, Dan Fort has been an "employer" of Plaintiffs as defined in FLSA § 3(d), 29 U.S.C. §203(d).

51.

Dan Fort is subject to the personal jurisdiction of this Court.

52.

Dan Fort may be served with process at his residence located at 616 Elliott Road, McDonough, Georgia 30252 or wherever he may be located.

53.

Sherri Fort resides within Henry County, Georgia.

54.

At all times material hereto, Plaintiffs have been "employees" of Sherri Fort as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

55.

At all times material hereto, Sherri Fort has been an "employer" of Plaintiffs as defined in FLSA § 3(d), 29 U.S.C. §203(d).

56.

Sherri Fort is subject to the personal jurisdiction of this Court.

57.

Sherri Fort may be served with process at her residence located at 616 Elliott Road, McDonough, Georgia 30252 or wherever he may be located.

### a. FLSA Individual Coverage

58.

From on or about May 18, 2013 until the date of filing of the within action ("the Relevant Time Period"), Plaintiffs have been "engaged in commerce" as employees of American Heritage as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a) and FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

59.

At all times during the Relevant Time Period, Plaintiffs have been "engaged in commerce" as employees of OTS as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a) and FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

60.

At all times during the Relevant Time Period, Plaintiffs regularly used the channels of interstate commerce in the course of their duties for Defendants.

**b. FLSA Enterprise Coverage**

61.

At all times during the Relevant Time Period, American Heritage has been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a) and in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

62.

During 2013, American Heritage had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

63.

During 2014, American Heritage had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

64.

During 2015, American Heritage had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

65.

During 2016, American Heritage had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

66.

During 2013, American Heritage had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

67.

During 2014, American Heritage had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

68.

During 2015, American Heritage had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

69.

During 2016, American Heritage had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

70.

During 2013, American Heritage had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

71.

During 2014, American Heritage had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

72.

During 2015, American Heritage had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

73.

During 2016, American Heritage had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

74.

At all times during the Relevant Time Period, OTS has been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a) and in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

75.

During 2013, OTS had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

76.

During 2014, OTS had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

77.

During 2015, OTS had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

78.

During 2016, OTS had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

79.

During 2013, OTS had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

80.

During 2014, OTS had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

81.

During 2015, OTS had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

82.

During 2016, OTS had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

83.

During 2013, OTS had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

84.

During 2014, OTS had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

85.

During 2015, OTS had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

86.

During 2016, OTS had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

87.

At all times during the Relevant Time Period, OTS has been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

### c.  Individual Liability as Statutory Employers

88.

At all times during the Relevant Time Period, Dan Fort exercised operational control over the work activities of Plaintiffs.

89.

At all times during the Relevant Time Period, Dan Fort was involved in the day to day operation of American Heritage for which Plaintiffs worked.

90.

At all times during the Relevant Time Period, American Heritage vested Dan Fort with supervisory authority over Plaintiffs.

91.

At all times during the Relevant Time Period, Dan Fort was involved in the day to day operation of OTS for which Plaintiffs worked.

92.

At all times during the Relevant Time Period, OTS vested Dan Fort with supervisory authority over Plaintiffs.

93.

At all times during the Relevant Time Period, Dan Fort exercised supervisory authority over Plaintiffs.

94.

At all times during the Relevant Time Period, Dan Fort scheduled Plaintiffs' working hours or supervised the scheduling of Plaintiffs' working hours.

95.

At all times during the Relevant Time Period, Dan Fort exercised authority and supervision over Plaintiffs' compensation.

96.

At all times during the Relevant Time Period, Sherri Fort exercised operational control over the work activities of Plaintiffs.

97.

At all times during the Relevant Time Period, Sherri Fort was involved in the day to day operation of American Heritage for which Plaintiffs worked.

98.

At all times during the Relevant Time Period, American Heritage vested Sherri Fort with supervisory authority over Plaintiffs.

99.

At all times during the Relevant Time Period, Sherri Fort was involved in the day to day operation of OTS for which Plaintiffs worked.

100.

At all times during the Relevant Time Period, OTS vested Sherri Fort with supervisory authority over Plaintiffs.

101.

At all times during the Relevant Time Period, Sherri Fort exercised supervisory authority over Plaintiffs.

102.

At all times during the Relevant Time Period, Sherri Fort scheduled Plaintiffs' working hours or supervised the scheduling of Plaintiffs' working hours.

103.

At all times during the Relevant Time Period, Sherri Fort exercised authority and supervision over Plaintiffs' compensation.

### d.  Joint Employer Allegations

104.

American Heritage and OTS comprise a single "enterprise engaged in commerce" as defined in FLSA §3(s)(1)(C); 29 U.S.C. § 203(s)(1 )(C).

105.

At all times during the Relevant Time Period, American Heritage and OTS have shared the services of Plaintiffs.

106.

At all times during the Relevant Time Period, American Heritage and OTS have acted directly or indirectly in the interest of each other with respect to Plaintiffs.

107.

At all times during the Relevant Time Period, Plaintiffs have been under the direct control of both American Heritage and OTS.

108.

At all times during the Relevant Time Period, American Heritage and OTS have exercised joint control over the Plaintiffs in their capacity as employees.

109.

In 2013, American Heritage and OTS jointly had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

110.

In 2014, American Heritage and OTS jointly had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

111.

In 2015, American Heritage and OTS jointly had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

112.

In 2016, American Heritage and OTS jointly had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

113.

At all times during the Relevant Time Period, American Heritage and OTS have utilized the same principal business address.

114.

At all times during the Relevant Time Period, American Heritage and OTS have utilized the same principal business telephone number.

115.

At all times during the Relevant Time Period, American Heritage and OTS have been joint employers of Plaintiffs within the meaning of the FLSA.

**e.  FLSA Exemptions for Plaintiff Breeding**

116.

At all times during the Relevant Time Period, Breeding's primary duty did not involve the exercise of independent judgment or discretion regarding significant business decisions on behalf of Defendants.

117.

At all times during the Relevant Time Period, Breeding did not supervise two or more employees of Defendants.

118.

At all times during the Relevant Time Period, Breeding did not supervise any employees of Defendants.

119.

At all times during the Relevant Time Period, Breeding did not have the authority to hire employees on behalf of Defendants.

120.

At all times during the Relevant Time Period, Breeding did not have the authority to fire employees on behalf of Defendants.

121.

At all times during the Relevant Time Period, Defendants did not give particular weight to Breeding's recommendations regarding the hiring or firing of Defendants' employees.

122.

At all times during the Relevant Time Period, Breeding did not interview potential employees on behalf of Defendants.

123.

At all times during the Relevant Time Period, Breeding did not discipline Defendants' employees.

124.

At all times during the Relevant Time Period, Breeding was not genuinely salaried.

125.

At all times during the Relevant Time Period, Defendants misclassified Breeding as exempt for the FLSA maximum hours provisions.

126.

At all times during the Relevant Time Period, Breeding was not exempt from the FLSA maximum hours provisions by reason of any exemption.

127.

At all times during the Relevant Time Period, Defendants did not employ Breeding in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

128.

At all times during the Relevant Time Period, Defendants did not employ Breeding in a bona fide administrative capacity within the meaning of 29 USC § 213 (a).

129.

At all times during the Relevant Time Period, Defendants did not employ Breeding in a bona fide executive capacity within the meaning of 29 USC § 213 (a).

130.

At all times material hereto, Defendants did not employ Breeding in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a).

131.

At all times material hereto, Breeding was not exempt from the FLSA minimum wage requirements by reason of any exemption.

132.

During 2013, Defendants classified Breeding as an independent contractor.

133.

During 2013, Defendants misclassified Breeding as an independent contractor.

134.

During 2013, Defendants willfully misclassified Breeding as an independent contractor.

135.

At all times during the Relevant Time Period, the work Breeding performed formed an integral part of Defendants' business.

136.

At all times during the Relevant Time Period, Defendants required Breeding to comply with verbal instructions about how he was to perform his duties.

137.

At all times during the Relevant Time Period, Defendants provided instruction to Breeding about how he should perform his job duties for Defendants.

138.

At all times during the Relevant Time Period, Breeding's work and services were integrated into Defendants' business operations and were important to the success and continuation of Defendants' business.

139.

At all times during the Relevant Time Period, Defendants required Breeding to perform his services for Defendants personally and did not permit him to hire, supervise, or pay employees of his own to perform the services that he provided to Defendants.

140.

At all times during the Relevant Time Period, Breeding did not make or maintain a significant investment in the equipment that he used in performing his work for Defendants.

141.

At all times during the Relevant Time Period, Breeding was not able to earn any profit or suffer any loss other than by earning hourly wages for the time he worked for Defendants.

142.

At all times during the Relevant Time Period, Defendants required that Breeding's services be exclusively available to Defendants.

143.

At all times during the Relevant Time Period, Defendants determined the hours and schedule which they required Breeding to work.

144.

At all times during the Relevant Time Period, Defendants required Breeding to work full time for Defendants.

145.

At all times during the Relevant Time Period, Defendants reserved the right to terminate Breeding's employment at any time, at its own convenience, without incurring any liability except for the work performed and expenses already incurred before the termination.

146.

At all times during the Relevant Time Period, Defendants closely supervised Breeding.

147.

At all times during the Relevant Time Period, Defendants were aware of the FLSA requirement that it compensate non-exempt employees at one and one-half

times their regular rates for all time that it suffered or permitted them to work in excess of forty (40) hours in a workweek.

148.

At all times during the Relevant Time Period, Defendants were aware that Breeding's employment circumstances failed to meet the standards required for the proper classification of a worker as an independent contractor under federal case law, regulations, and guidelines.

149.

At all times during the Relevant Time Period, Defendants were aware that Breeding was completely dependent upon Defendants for his livelihood.

150.

At all times during the Relevant Time Period, Defendants were aware that they exercised control over the terms and conditions of Breeding's work.

151.

At all times during the Relevant Time Period, Defendants were aware that, as a matter of economic reality, Breeding was an employee within the meaning of the FLSA.

152.

Defendants failed to rely on the advice of legal counsel when they made the determination to classify Breeding as an independent contractor.

153.

Defendants failed to rely on any opinion, rule, or regulation propounded by the U.S. Department of Labor when they classified Breeding as an independent contractor during 2013.

154.

Defendants failed to rely on any opinion, rule, or regulation propounded by the U.S. Department of Labor when they continued to classify Breeding as an independent contractor during 2013.

155.

Defendants classified Breeding as an independent contractor rather than as an employee in order to avoid paying him at one-and-one-half times his regular rate for worked in excess of forty hours in a workweek during the year 2013.

156.

Defendants willfully classified Breeding as an independent contractor rather than as an employee in order to avoid paying him at one-and-one-half times his regular rate for worked in excess of forty hours in a workweek during the year 2013.

### f.  Fraudulent Tax Filings for Plaintiff Breeding

157.

In 2014, OTS composed and filed an IRS Form 1099-MISC ("the Breeding 2013 Form 1099") with the Internal Revenue Service ("IRS") with respect to compensation that it paid Breeding during 2013.

158.

OTS reported in Box 7 of the Breeding 2013 Form 1099, that the compensation it paid Breeding during 2013 was "nonemployee compensation".

159.

When it composed and filed the Breeding 2013 Form 1099, OTS knew that the compensation it paid Breeding in 2013 was not "nonemployee compensation".

160.

OTS falsely designated Breeding's 2013 compensation in Box 7 of the Breeding 2013 Form 1099 as "nonemployee compensation."

161.

OTS fraudulently designated Breeding's 2013 compensation in Box 7 of the Breeding 2013 Form 1099 as "nonemployee compensation."

162.

OTS intentionally and willfully designated Breeding's compensation as "nonemployee compensation" when it composed and filed the Breeding 2013 Form 1099 for the purpose of its own enrichment and to avoid paying worker's

compensation insurance premiums and state and federal taxes, including but not limited to payroll taxes, social security taxes, and unemployment taxes.

163.

In 2016, OTS filed an IRS Form W-2 with the IRS with respect to compensation that it paid Breeding during 2015 ("the Breeding 2015 W2 Form").

164.

OTS reported in Box 1 (Wages, tips, other comp.), Box 3 (Social security wages), Box 5 (Medicare Wages), and Box 16 (State wages and tips, etc.) on the Breeding 2015 W2 Form that it paid Breeding $24,932.00 in 2015.

165.

OTS reported in Box 2 on the Breeding 2015 W2 Form that it withheld $1,817.23 from Breeding's wages in Federal Income Taxes in 2015.

166.

OTS reported in Box 4 on the Breeding 2015 W2 Form that it withheld $1,545.78 from Breeding's wages in Social Security Taxes in 2015.

167.

OTS reported in Box 6 on the Breeding 2015 W2 Form that it withheld $361.51 from Breeding's wages in Medicare Taxes in 2015.

168.

OTS reported in Box 17 on the Breeding 2015 W2 Form that it withheld $1,026.26 from Breeding's wages in state income taxes in 2015.

169.

OTS did not pay Breeding $24,932.00 in 2015.

170.

OTS paid Breeding significantly less than $24,932.00 in 2015.

171.

When it composed and filed the Breeding 2015 W2 Form, OTS knew that it did not pay Breeding $24,932.00 in 2015.

172.

OTS falsely designated $24,932.00 in Boxes 1, 3, 5 and 16 on the Breeding 2015 W2 Form.

173.

OTS fraudulently designated $24,932.00 in Boxes 1, 3, 5 and 16 on the Breeding 2015 W2 Form.

174.

OTS did not withhold $1,817.23 from Breeding's wages for Federal Income Tax in 2015.

175.

When it composed and filed the Breeding 2015 W2 Form, OTS knew that it did not withhold $1,817.23 from Breeding's wages for Federal Income Tax in 2015.

176.

OTS falsely designated $1,817.23 in Box 2 on the Breeding 2015 W2 Form.

177.

OTS fraudulently designated $1,817.23 in Box 2 on the Breeding 2015 W2 Form.

178.

OTS did not withhold $1,545.78 from Breeding's wages for Social Security Tax in 2015.

179.

When it composed and filed the Breeding 2015 W2 Form, OTS knew that it did not withhold $1,545.78 from Breeding's wages for Social Security Tax in 2015.

180.

OTS falsely designated $1,545.78 in Box 4 on the Breeding 2015 W2 Form.

181.

OTS fraudulently designated $1,545.73 in Box 4 on the Breeding 2015 W2 Form.

182.

OTS did not withhold $361.51 from Breeding's wages for Medicare Tax in 2015.

183.

When it composed and filed the Breeding 2015 W2 Form, OTS knew that it did not withhold $361.51 from Breeding's wages for Medicare Tax in 2015.

184.

OTS falsely designated $361.51 in Box 6 on the Breeding 2015 W2 Form.

185.

OTS fraudulently designated $361.51 in Box 6 on the Breeding 2015 W2 Form.

186.

OTS did not withhold $1,026.26 from Breeding's wages for state income taxes in 2015.

187.

When it composed and filed the Breeding 2015 W2 Form, OTS knew that it did not withhold $1,026.26 from Breeding's wages for state income taxes in 2015.

188.

OTS falsely designated $1,026.26 in Box 17 on the Breeding 2015 W2 Form.

189.

OTS fraudulently designated $1,026.26 in Box 17 on the Breeding 2015 W2 Form.

190.

OTS intentionally and willfully composed and filed the Breeding 2015 W2 Form and all of the false designations therein for the purpose of its own enrichment.

### g. FLSA Exemptions for Plaintiff LeBlanc

191.

At all times during the Relevant Time Period, LeBlanc's primary duty did not involve the exercise of independent judgment or discretion regarding significant business decisions on behalf of Defendants.

192.

At all times during the Relevant Time Period, LeBlanc did not supervise two or more employees of Defendants.

193.

At all times during the Relevant Time Period, LeBlanc did not supervise any employees of Defendants.

194.

At all times during the Relevant Time Period, LeBlanc did not have the authority to hire employees on behalf of Defendants.

195.

At all times during the Relevant Time Period, LeBlanc did not have the authority to fire employees on behalf of Defendants.

196.

At all times during the Relevant Time Period, Defendants did not give particular weight to LeBlanc's recommendations regarding the hiring or firing of Defendants' employees.

197.

At all times during the Relevant Time Period, LeBlanc did not interview potential employees on behalf of Defendants.

198.

At all times during the Relevant Time Period, LeBlanc did not discipline Defendants' employees.

199.

At all times during the Relevant Time Period, LeBlanc was not genuinely salaried.

200.

At all times during the Relevant Time Period, Defendants misclassified LeBlanc as exempt for the FLSA maximum hours provisions.

201.

At all times during the Relevant Time Period, LeBlanc was not exempt from the FLSA maximum hours provisions by reason of any exemption.

202.

At all times during the Relevant Time Period, Defendants did not employ LeBlanc in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

203.

At all times during the Relevant Time Period, Defendants did not employ LeBlanc in a bona fide administrative capacity within the meaning of 29 USC § 213 (a).

204.

At all times during the Relevant Time Period, Defendants did not employ LeBlanc in a bona fide executive capacity within the meaning of 29 USC § 213 (a).

205.

At all times material hereto, Defendants did not employ LeBlanc in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a).

206.

At all times material hereto, LeBlanc was not exempt from the FLSA minimum wage requirements by reason of any exemption.

207.

At all times during the Relevant Time Period, the work LeBlanc performed formed an integral part of Defendants' business.

208.

At all times during the Relevant Time Period, Defendants required LeBlanc to comply with verbal instructions about how he was to perform his duties.

209.

At all times during the Relevant Time Period, Defendants provided instruction to LeBlanc about how he should perform his job duties for Defendants.

210.

At all times during the Relevant Time Period, LeBlanc's work and services were integrated into Defendants' business operations and were important to the success and continuation of Defendants' business.

211.

At all times during the Relevant Time Period, Defendants required LeBlanc to perform his services for Defendants personally and did not permit him to hire, supervise or pay employees of his own to perform the services that he provided to Defendants.

212.

At all times during the Relevant Time Period, LeBlanc did not make or maintain a significant investment in the equipment that he used in performing his work for Defendants.

213.

At all times during the Relevant Time Period, LeBlanc was not able to earn any profit or suffer any loss other than by earning hourly wages for the time he worked for Defendants.

214.

At all times during the Relevant Time Period, Defendants required that LeBlanc's services be exclusively available to Defendants.

215.

At all times during the Relevant Time Period, Defendants determined the hours and schedule which they required LeBlanc to work.

216.

At all times during the Relevant Time Period, Defendants required LeBlanc to work full time for Defendants.

217.

At all times during the Relevant Time Period, Defendants reserved the right to terminate LeBlanc's employment at any time, at its own convenience, without incurring any liability except for the work performed and expenses already incurred before the termination.

218.

At all times during the Relevant Time Period, Defendants closely supervised LeBlanc.

219.

At all times during the Relevant Time Period, Defendants were aware that they exercised control over the terms and conditions of LeBlanc's work.

**h. Fraudulent Tax Filings for Plaintiff LeBlanc**

220.

In 2016, OTS filed an IRS Form W-2 with the IRS with respect to compensation that it paid LeBlanc during 2015 ("the LeBlanc 2015 W2 Form").

221.

OTS reported in Box 1 (Wages, tips, other comp.), Box 3 (Social security wages), Box 5 (Medicare Wages), and Box 16 (State wages and tips, etc.) on the LeBlanc 2015 W2 Form reported that it paid LeBlanc $24,932.00 in 2015.

222.

OTS reported in Box 2 on the LeBlanc 2015 W2 Form reported that it withheld $1,669.11 from LeBlanc's wages in Federal Income Taxes in 2015.

223.

OTS reported in Box 4 on the LeBlanc 2015 W2 Form reported that it withheld $1,545.78 from LeBlanc's wages in Social Security Taxes in 2015.

224.

OTS reported in Box 6 on the LeBlanc 2015 W2 Form that it withheld $361.51 from LeBlanc's wages in Medicare Taxes in 2015.

225.

OTS reported in Box 17 on the LeBlanc 2015 W2 Form that it withheld $1,285.01 from LeBlanc's wages in state income taxes in 2015.

226.

OTS did not pay LeBlanc $24,932.00 in 2015.

227.

OTS paid LeBlanc significantly less than $24,932.00 in 2015.

228.

When it composed and filed the LeBlanc 2015 W2 Form, OTS knew that it did not pay LeBlanc $24,932.00 in 2015.

229.

OTS falsely designated $24,932.00 in Boxes 1, 3, 5 and 16 on the LeBlanc 2015 W2 Form.

230.

OTS fraudulently designated $24,932.00 in Boxes 1, 3, 5 and 16 on the LeBlanc 2015 W2 Form.

231.

OTS did not withhold $1,669.11 from LeBlanc's wages for Federal Income Tax in 2015.

232.

When it composed and filed the LeBlanc 2015 W2 Form, OTS knew that it did not withhold $1,669.11 from LeBlanc's wages for Federal Income Tax in 2015.

233.

OTS falsely designated $1,669.11 in Box 2 on the LeBlanc 2015 W2 Form.

234.

OTS fraudulently designated $1,669.11 in Box 2 on the LeBlanc 2015 W2 Form.

235.

OTS did not withhold $1,545.78 from LeBlanc's wages for Social Security Tax in 2015.

236.

When it composed and filed the LeBlanc 2015 W2 Form, OTS knew that it did not withhold $1,545.78 from LeBlanc's wages for Social Security Tax in 2015.

237.

OTS falsely designated $1,545.78 in Box 4 on the LeBlanc 2015W2 Form.

238.

OTS fraudulently designated $1,545.78 in Box 4 on the LeBlanc 2015 W2 Form.

239.

OTS did not withhold $361.51 from LeBlanc's wages for Medicare Tax in 2015.

240.

When it composed and filed the LeBlanc 2015 W2 Form, OTS knew that it did not withhold $361.51 from LeBlanc's wages for Medicare Tax in 2015.

241.

OTS falsely designated $361.51 in Box 6 on the LeBlanc 2015 W2 Form.

242.

OTS fraudulently designated $361.51 in Box 6 on the LeBlanc 2015 W2 Form.

243.

OTS did not withhold $1,285.01 from LeBlanc's wages for state income taxes in 2015.

244.

When it composed and filed the LeBlanc 2015 W2 Form, OTS knew that it did not withhold $1,285.01 from LeBlanc's wages for state income taxes in 2015.

245.

OTS falsely designated $1,285.01 in Box 17 on the LeBlanc 2015 W2 Form.

246.

OTS fraudulently designated $1,285.01 in Box 17 on the LeBlanc 2015 W2 Form.

247.

OTS intentionally and willfully composed and filed the LeBlanc 2015 W2 Form and all of the false designations therein for the purpose of its own enrichment.

### i.   FLSA Exemptions for Plaintiff Sheetz

248.

At all times during the Relevant Time Period, Sheetz's primary duty did not involve the exercise of independent judgment or discretion regarding significant business decisions on behalf of Defendants.

249.

At all times during the Relevant Time Period, Sheetz did not supervise two or more employees of Defendants.

250.

At all times during the Relevant Time Period, Sheetz did not supervise any employees of Defendants.

251.

At all times during the Relevant Time Period, Sheetz did not have the authority to hire employees on behalf of Defendants.

252.

At all times during the Relevant Time Period, Sheetz did not have the authority to fire employees on behalf of Defendants.

253.

At all times during the Relevant Time Period, Defendants did not give particular weight to Sheetz's recommendations regarding the hiring or firing of Defendants' employees.

254.

At all times during the Relevant Time Period, Sheetz did not interview potential employees on behalf of Defendants.

255.

At all times during the Relevant Time Period, Sheetz did not discipline Defendants' employees.

256.

At all times during the Relevant Time Period, Sheetz was not genuinely salaried.

257.

At all times during the Relevant Time Period, Defendants misclassified Sheetz as exempt for the FLSA maximum hours provisions.

258.

At all times during the Relevant Time Period, Sheetz was not exempt from the FLSA maximum hours provisions by reason of any exemption.

259.

At all times during the Relevant Time Period, Defendants did not employ Sheetz in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

260.

At all times during the Relevant Time Period, Defendants did not employ Sheetz in a bona fide administrative capacity within the meaning of 29 USC § 213 (a).

261.

At all times during the Relevant Time Period, Defendants did not employ Sheetz in a bona fide executive capacity within the meaning of 29 USC § 213 (a).

262.

At all times material hereto, Defendants did not employ Sheetz in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a).

263.

At all times material hereto, Sheetz was not exempt from the FLSA minimum wage requirements by reason of any exemption.

### j.   FLSA Exemptions for Plaintiff Wilson

264.

At all times during the Relevant Time Period, Wilson's primary duty did not involve the exercise of independent judgment or discretion regarding significant business decisions on behalf of Defendants.

265.

At all times during the Relevant Time Period, Wilson did not supervise two or more employees of Defendants.

266.

At all times during the Relevant Time Period, Wilson did not supervise any employees of Defendants.

267.

At all times during the Relevant Time Period, Wilson did not have the authority to hire employees on behalf of Defendants.

268.

At all times during the Relevant Time Period, Wilson did not have the authority to fire employees on behalf of Defendants.

269.

At all times during the Relevant Time Period, Defendants did not give particular weight to Wilson's recommendations regarding the hiring or firing of Defendants' employees.

270.

At all times during the Relevant Time Period, Wilson did not interview potential employees on behalf of Defendants.

271.

At all times during the Relevant Time Period, Wilson did not discipline Defendants' employees.

272.

At all times during the Relevant Time Period, Wilson was not genuinely salaried.

273.

At all times during the Relevant Time Period, Defendants misclassified Wilson as exempt for the FLSA maximum hours provisions.

274.

At all times during the Relevant Time Period, Wilson was not exempt from the FLSA maximum hours provisions by reason of any exemption.

275.

At all times during the Relevant Time Period, Defendants did not employ Wilson in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

276.

At all times during the Relevant Time Period, Defendants did not employ Wilson in a bona fide administrative capacity within the meaning of 29 USC § 213 (a).

277.

At all times during the Relevant Time Period, Defendants did not employ Wilson in a bona fide executive capacity within the meaning of 29 USC § 213 (a).

278.

At all times material hereto, Defendants did not employ Wilson in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a).

279.

At all times material hereto, Wilson was not exempt from the FLSA minimum wage requirements by reason of any exemption.

280.

At all times during the Relevant Time Period, the work Wilson performed formed an integral part of Defendants' business.

281.

At all times during the Relevant Time Period, Defendants required Wilson to comply with verbal instructions about how he was to perform his duties.

282.

At all times during the Relevant Time Period, Defendants provided instruction to Wilson about how he should perform his job duties for Defendants.

283.

At all times during the Relevant Time Period, Wilson's work and services were integrated into Defendants' business operations and were important to the success and continuation of Defendants' business.

284.

At all times during the Relevant Time Period, Defendants required Wilson to perform his services for Defendants personally and did not permit him to hire, supervise, or pay employees of his own to perform the services that he provided to Defendants.

285.

At all times during the Relevant Time Period, Wilson did not make or maintain a significant investment in the equipment that he used in performing his work for Defendants.

286.

At all times during the Relevant Time Period, Wilson was not able to earn any profit or suffer any loss other than by earning hourly wages for the time he worked for Defendants.

287.

At all times during the Relevant Time Period, Defendants required that Wilson's services be exclusively available to Defendants.

288.

At all times during the Relevant Time Period, Defendants determined the hours and schedule which they required Wilson to work.

289.

At all times during the Relevant Time Period, Defendants required Wilson to work full time for Defendants.

290.

At all times during the Relevant Time Period, Defendants reserved the right to terminate Wilson's employment at any time, at its own convenience without incurring any liability except for the work performed and expenses already incurred before the termination.

291.

At all times during the Relevant Time Period, Defendants closely supervised Wilson.

292.

At all times during the Relevant Time Period, Defendants were aware of the FLSA requirement that it compensate non-exempt employees at one and one-half times their regular rates for all time that it suffered or permitted them to work in excess of forty (40) hours in a workweek.

293.

At all times during the Relevant Time Period, Defendants were aware that they exercised control over the terms and conditions of Wilson's work.

### k.  Fraudulent Tax Filings for Plaintiff Wilson

294.

In 2016, OTS filed an IRS Form W-2 with the IRS with respect to compensation that it paid Wilson during 2015 ("the Wilson 2015 W2 Form").

295.

OTS reported in Box 1 (Wages, tips, other comp.), Box 3 (Social security wages), Box 5 (Medicare Wages), and Box 16 (State wages and tips, etc.) on the Wilson 2015 W2 Form that it paid Wilson $21,680.00 in 2015.

296.

OTS reported in Box 2 of the Wilson 2015 W2 Form that it withheld $451.40 from Wilson's wages in Federal Income Taxes in 2015.

297.

OTS reported in Box 4 on the Wilson 2015 W2 Form reported that it withheld $1,344.16 from Wilson's wages in Social Security Taxes in 2015.

298.

OTS reported in Box 6 on the Wilson 2015 W2 Form that it withheld $314.36 from Wilson's wages in Medicare Taxes in 2015.

299.

OTS reported in Box 17 on the Wilson 2015 W2 Form that it withheld $564.20 from Wilson's wages in state income taxes in 2015.

300.

OTS did not pay Wilson $21,680.00 in 2015.

301.

OTS paid Wilson significantly less than $21,680.00 in 2015.

302.

When it composed and filed the Wilson 2015 W2 Form, OTS knew that it did not pay Wilson $21,680.00 in 2015.

303.

OTS falsely designated $21,680.00 in Boxes 1, 3, 5 and 16 on the Wilson 2015 W2 Form.

304.

OTS fraudulently designated $21,680.00 in Boxes 1, 3, 5 and 16 on the Wilson 2015 W2 Form.

305.

OTS did not withhold $451.40 from Wilson's wages for Federal Income Tax in 2015.

306.

When it composed and filed the Wilson 2015 W2 Form, OTS knew that it did not withhold $451.40 from Wilson's wages for Federal Income Tax in 2015.

307.

OTS falsely designated $451.40 in Box 2 on the Wilson 2015 W2 Form.

308.

OTS fraudulently designated $451.40 in Box 2 on the Wilson 2015 W2 Form.

309.

OTS did not withhold $1,344.16 from Wilson's wages for Social Security Tax in 2015.

310.

When it composed and filed the Wilson 2015 W2 Form, OTS knew that it did not withhold $1,344.16 from Wilson's wages for Social Security Tax in 2015.

311.

OTS falsely designated $1,344.16 in Box 4 on the Wilson 2015W2 Form.

312.

OTS fraudulently designated $1,344.16 in Box 4 on the Wilson 2015 W2 Form.

313.

OTS did not withhold $314.36 from Wilson's wages for Medicare Tax in 2015.

314.

When it composed and filed the Wilson 2015 W2 Form, OTS knew that it did not withhold $314.36 from Wilson's wages for Medicare Tax in 2015.

315.

OTS falsely designated $314.36 in Box 6 on the Wilson 2015 W2 Form.

316.

OTS fraudulently designated $314.36 in Box 6 on the Wilson 2015 W2 Form.

317.

OTS did not withhold $564.20 from Wilson's wages for state income taxes in 2015.

318.

When it composed and filed the Wilson 2015 W2 Form, OTS knew that it did not withhold $564.20 from Wilson's wages for state income taxes in 2015.

319.

OTS falsely designated $564.20 in Box 17 on the Wilson 2015 W2 Form.

320.

OTS fraudulently designated $564.20 in Box 17 on the Wilson 2015 W2 Form.

321.

OTS intentionally and willfully composed and filed the Wilson 2015 W2 Form and all of the false designations therein for the purpose of its own enrichment.

### l.   FLSA Exemptions for Plaintiff Young

322.

At all times during the Relevant Time Period, Young's primary duty did not involve the exercise of independent judgment or discretion regarding significant business decisions on behalf of Defendants.

323.

At all times during the Relevant Time Period, Young did not supervise two or more employees of Defendants.

324.

At all times during the Relevant Time Period, Young did not supervise any employees of Defendants.

325.

At all times during the Relevant Time Period, Young did not have the authority to hire employees on behalf of Defendants.

326.

At all times during the Relevant Time Period, Young did not have the authority to fire employees on behalf of Defendants.

327.

At all times during the Relevant Time Period, Defendants did not give particular weight to Young's recommendations regarding the hiring or firing of Defendants' employees.

328.

At all times during the Relevant Time Period, Young did not interview potential employees on behalf of Defendants.

329.

At all times during the Relevant Time Period, Young did not discipline Defendants' employees.

330.

At all times during the Relevant Time Period, Young was not genuinely salaried.

331.

At all times during the Relevant Time Period, Defendants misclassified Young as exempt for the FLSA maximum hours provisions.

332.

At all times during the Relevant Time Period, Young was not exempt from the FLSA maximum hours provisions by reason of any exemption.

333.

At all times during the Relevant Time Period, Defendants did not employ Young in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

334.

At all times during the Relevant Time Period, Defendants did not employ Young in a bona fide administrative capacity within the meaning of 29 USC § 213 (a).

335.

At all times during the Relevant Time Period, Defendants did not employ Young in a bona fide executive capacity within the meaning of 29 USC § 213 (a).

336.

At all times material hereto, Defendants did not employ Young in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a).

337.

At all times material hereto, Young was not exempt from the FLSA minimum wage requirements by reason of any exemption.

338.

At all times during the Relevant Time Period, the work Young performed formed an integral part of Defendants' business.

339.

At all times during the Relevant Time Period, Defendants required Young to comply with verbal instructions about how he was to perform his duties.

340.

At all times during the Relevant Time Period, Defendants provided instruction to Young about how he should perform his job duties for Defendants.

341.

At all times during the Relevant Time Period, Young's work and services were integrated into Defendants' business operations and were important to the success and continuation of Defendants' business.

342.

At all times during the Relevant Time Period, Defendants required Young to perform his services for Defendants personally and did not permit him to hire, supervise, or pay employees of his own to perform the services that he provided to Defendants.

343.

At all times during the Relevant Time Period, Young did not make or maintain a significant investment in the equipment that he used in performing his work for Defendants.

344.

At all times during the Relevant Time Period, Young was not able to earn any profit or suffer any loss other than by earning hourly wages for the time he worked for Defendants.

345.

At all times during the Relevant Time Period, Defendants required that Young's services be exclusively available to Defendants.

346.

At all times during the Relevant Time Period, Defendants determined the hours and schedule which they required Young to work.

347.

At all times during the Relevant Time Period, Defendants required Young to work full time for Defendants.

348.

At all times during the Relevant Time Period, Defendants reserved the right to terminate Young's employment at any time, at its own convenience without incurring any liability except for the work performed and expenses already incurred before the termination.

349.

At all times during the Relevant Time Period, Defendants closely supervised Young.

350.

At all times during the Relevant Time Period, Defendants were aware of the FLSA requirement that it compensate non-exempt employees at one and one-half times their regular rates for all time that it suffered or permitted them to work in excess of forty (40) hours in a workweek.

351.

At all times during the Relevant Time Period, Defendants were aware that Young was completely dependent upon Defendants for his livelihood.

352.

At all times during the Relevant Time Period, Defendants were aware that they exercised control over the terms and conditions of Young's work.

**m. Fraudulent Tax Filings for Plaintiff Young**

353.

In 2016, OTS filed an IRS Form W-2 with the IRS with respect to compensation that it paid Young during 2015 ("the Young 2015 W2 Form").

354.

OTS reported in Box 1 (Wages, tips, other comp.), Box 3 (Social security wages), Box 5 (Medicare Wages), and Box 16 (State wages and tips, etc.) on the Young 2015 W2 Form it paid Young $29,900.00 in 2015.

355.

OTS reported in Box 2 of the Young 2015 W2 Form that it withheld $2,562.43 from Young's wages in Federal Income Taxes in 2015.

356.

OTS reported in Box 4 on the Young 2015 W2 Form that it withheld $1,853.80 from Young's wages in Social Security Taxes in 2015.

357.

OTS reported in Box 6 on the Young 2015 W2 Form that it withheld $433.55 from Young's wages in Medicare Taxes in 2015.

358.

OTS reported in Box 17 on the Young 2015 W2 Form that it withheld $1,324.34 from Young's wages in state income taxes in 2015.

359.

OTS did not pay Young $29,900.00 in 2015.

360.

OTS paid Young significantly less than $29,900.00 in 2015.

361.

When it composed and filed the Young 2015 W2 Form, OTS knew that it did not pay Young $29,900.00 in 2015.

362.

OTS falsely designated $29,900.00 in Boxes 1, 3, 5 and 16 on the Young 2015 W2 Form.

363.

OTS fraudulently designated $29,900.00 in Boxes 1, 3, 5 and 16 on the Young 2015 W2 Form.

364.

OTS did not withhold $2,562.43 from Young's wages for Federal Income Tax in 2015.

365.

When it composed and filed the Young 2015 W2 Form, OTS knew that it did not withhold $2,562.43 from Young's wages for Federal Income Tax in 2015.

366.

OTS falsely designated $2,562.43 in Box 2 on the Young 2015 W2 Form.

367.

OTS fraudulently designated $2,562.43 in Box 2 on the Young 2015 W2 Form.

368.

OTS did not withhold $1,853.80 from Young's wages for Social Security Tax in 2015.

369.

When it composed and filed the Young 2015 W2 Form, OTS knew that it did not withhold $1,853.80 from Young wages for Social Security Tax in 2015.

370.

OTS falsely designated $1,853.80 in Box 4 on the Young 2015W2 Form.

371.

OTS fraudulently designated $1,853.80 in Box 4 on the Young 2015 W2 Form.

372.

OTS did not withhold $433.55 from Young's wages for Medicare Tax in 2015.

373.

When it composed and filed the Young 2015 W2 Form, OTS knew that it did not withhold $433.55 from Young's wages for Medicare Tax in 2015.

374.

OTS falsely designated $433.55 in Box 6 on the Young 2015 W2 Form.

375.

OTS fraudulently designated $433.55 in Box 6 on the Young 2015 W2 Form.

376.

OTS did not withhold $1,324.34 from Young's wages for state income taxes in 2015.

377.

When it composed and filed the Young 2015 W2 Form, OTS knew that it did not withhold $1,324.34 from Young's wages for state income taxes in 2015.

378.

OTS falsely designated $1,324.34 in Box 17 on the Young 2015 W2 Form.

379.

OTS fraudulently designated $1,324.34 in Box 17 on the Young 2015 W2 Form.

380.

OTS intentionally and willfully composed and filed the Young 2015 W2 Form and all of the false designations therein for the purpose of its own enrichment.

## COUNT I
## FAILURE TO PAY MINIMUM WAGE TO PLAINTIFF BREEDING

381.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

382.

At all times material hereto, Breeding has been an employee covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

383.

At all times during 2015 and 2016, Defendants failed to compensate Breeding at an hourly rate above or equal to the minimum wage as established in accordance with the FLSA.

384.

At all times during 2015 and 2016, Defendants willfully failed to compensate Breeding, at an hourly rate equal to or above the minimum wage as established in accordance with the FLSA.

385.

Breeding is entitled to payment of minimum wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

386.

As a result of the underpayment of minimum wages as alleged above, Breeding is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

387.

As a result of the underpayment of minimum wages, Defendants are liable to Breeding for his litigation costs, including his reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT II

### FAILURE TO PAY OVERTIME TO PLAINTIFF BREEDING

388.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

389.

At all times material hereto, Breeding has been an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

390.

During the Relevant Time Period, Breeding regularly worked in excess of forty (40) hours each week.

391.

Defendants failed to pay Breeding at one and one half times his regular rate for work in excess of forty (40) hours in any week during the Relevant Time Period.

392.

Defendants willfully failed to pay Breeding at one and one half times his regular rate for work in excess of forty (40) hours in any week during the Relevant Time Period.

393.

Breeding is entitled to payment of due but unpaid overtime compensation in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

394.

As a result of the underpayment of overtime compensation as alleged above, Breeding is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

395.

As a result of the underpayment of overtime compensation as alleged above, Breeding is entitled to his litigation costs, including his reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT III
## FRAUDULENT FILING OF TAX INFORMATION RETURNS (26 U.S.C. § 7434) REGARDING PLAINTIFF BREEDING

396.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

397.

During 2013, Defendants classified Breeding as an independent contractor.

398.

During 2013, Defendants misclassified Breeding as an independent contractor.

399.

During 2013, Defendants intentionally, willfully, and fraudulently misclassified Breeding as an independent contractor.

400.

In 2014, Defendants intentionally, willfully, and fraudulently composed and filed a fraudulent IRS Form 1099 with the IRS falsely designating Breeding's compensation in 2013 as "nonemployee compensation".

401.

In 2016, Defendants intentionally, willfully, and fraudulently composed and filed a fraudulent W2 Form with the IRS which materially misrepresented the amount of compensation paid to Breeding in 2015 and all corresponding deductions.

402.

As a consequence of Defendants' willful filing of fraudulent tax information returns, Breeding is entitled to recover damages from Defendants, jointly and severally, up to and including any actual damages sustained, or in any event not less than $5,000 per fraudulent filing, as well as his costs of litigation including his reasonable attorneys' fees, pursuant to 26 U.S.C. § 7434.

## COUNT IV - BREACH OF CONTRACT WITH PLAINTIFF BREEDING
## AS TO DEFENDANTS AMERICAN HERITAGE AND OTS

### 403.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

### 404.

Breeding, American Heritage and OTS have been parties to a contract of employment (hereafter "the Breeding Contract") during the four years immediately preceding this action.

### 405.

The Breeding Contract provides that American Heritage and OTS will pay Breeding for work that was performed by Breeding on behalf of and for the benefit of American Heritage and OTS.

### 406.

American Heritage and OTS have failed to pay Breeding for work performed on approximately half of all scheduled pay dates in 2015 and 2016.

### 407.

American Heritage's and OTS's failure to pay Breeding for work performed on approximately half of all scheduled pay dates in 2015 and 2016 constitutes a material breach of the Breeding Contract.

408.

As the direct and foreseeable result of this breach, Breeding has sustained and continues to sustain damages in an amount to be proved at trial.

## COUNT V – QUANTUM MERUIT OF
## PLAINTIFF BREEDING
## AS TO DEFENDANTS AMERICAN HERITAGE AND OTS

409.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

410.

In 2015 and 2016, Breeding served as a range safety officer and salesman for American Heritage and OTS.

411.

Breeding's service as a range safety officer and salesman for American Heritage and OTS as described above was valuable to American Heritage and OTS

412.

American Heritage and OTS requested Breeding's service as a range safety officer and salesman.

413.

American Heritage and OTS knowingly accepted Breeding's service as a range safety officer and salesman.

414.

The receipt of Breeding's services as a range safety officer and salesman for American Heritage without compensation would be unjust.

415.

Breeding expected to be compensated at the time he provided his services as a range safety officer and salesman to American Heritage and OTS.

416.

Breeding is entitled to a recover from American Heritage and OTS, jointly and severally, the reasonable value of the services he provided as a range safety officer and salesman for American Heritage, in an amount to be determined at trial.

### COUNT VI - PROMISSORY ESTOPPEL OF
### PLAINTIFF BREEDING
### AS TO DEFENDANTS AMERICAN HERITAGE AND OTS

417.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

418.

American Heritage and OTS promised to pay Breeding in return for Breeding's service as a range safety officer and salesman for them.

419.

American Heritage and OTS should have reasonably expected that Breeding would induce action in reliance of said promise, *i.e.,* serve as a range safety officer and salesman for American Heritage and OTS.

420.

American Heritage's and OTS's promise induced Breeding to act in reliance thereof, *i.e.,* to serve as a range safety officer and salesman for American Heritage and OTS, to his detriment.

421.

Breeding's service as a range safety officer and salesman for American Heritage and OTS conferred a benefit on American Heritage and OTS.

422.

American Heritage and OTS failed to pay Breeding in accordance with their promise.

423.

Breeding relied on American Heritage's and OTS's promise.

424.

Breeding's reliance on American Heritage's and OTS's promise was reasonable.

425.

Injustice can only be avoided by enforcement of American Heritage's and OTS's promise.

426.

Breeding is entitled to a recover from American Heritage and OTS, jointly and severally, the reasonable value of the services he provided as a range safety officer and salesman for American Heritage and OTS, in an amount to be determined at trial.

## COUNT VII

### FAILURE TO PAY MINIMUM WAGE TO PLAINTIFF LEBLANC

427.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

428.

At all times material hereto, LeBlanc has been an employee covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

429.

During 2015 and 2016, Defendants failed to compensate LeBlanc at an hourly rate equal to or above the minimum wage as established in accordance with the FLSA.

430.

During 2015 and 2016, Defendants willfully failed to compensate LeBlanc, at an hourly rate above or equal to the minimum wage as established in accordance with the FLSA.

431.

LeBlanc is entitled to payment of minimum wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

432.

As a result of the underpayment of minimum wages as alleged above, LeBlanc is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

433.

As a result of the underpayment of minimum wages, Defendants are liable to LeBlanc for his litigation costs, including his reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT VIII
### FAILURE TO PAY OVERTIME TO PLAINTIFF LEBLANC

434.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

435.

At all times material hereto, LeBlanc has been an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

436.

During the Relevant Time Period, LeBlanc regularly worked in excess of forty (40) hours each week.

437.

Defendants failed to pay LeBlanc at one and one half times his regular rate for work in excess of forty (40) hours in any week during the Relevant Time Period.

438.

Defendants willfully failed to pay LeBlanc at one and one half times his regular rate for work in excess of forty (40) hours in any week during the Relevant Time Period.

439.

LeBlanc is entitled to payment of due but unpaid overtime compensation in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

440.

As a result of the underpayment of overtime compensation as alleged above, LeBlanc is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

441.

As a result of the underpayment of overtime compensation as alleged above, LeBlanc is entitled to his litigation costs, including his reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT IX
## FRAUDULENT FILING OF TAX INFORMATION RETURNS (26 U.S.C. § 7434) REGARDING PLAINTIFF LEBLANC

442.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

443.

In 2016, Defendants intentionally, willfully, and fraudulently composed and filed a fraudulent W2 Form with the IRS which materially misrepresented the amount of compensation paid to LeBlanc in 2015 and all corresponding deductions.

444.

As a consequence of Defendants' willful filing of fraudulent tax information returns, LeBlanc is entitled to recover damages from Defendants, jointly and

severally, up to and including any actual damages sustained, or in any event not less than $5,000 per fraudulent filing, as well as his costs of litigation including his reasonable attorneys' fees, pursuant to 26 U.S.C. § 7434.

## COUNT X - BREACH OF CONTRACT WITH PLAINTIFF LEBLANC AS TO DEFENDANTS AMERICAN HERITAGE AND OTS

### 445.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

### 446.

LeBlanc, American Heritage and OTS have been parties to a contract of employment (hereafter "the LeBlanc Contract") during the four years immediately preceding this action.

### 447.

The LeBlanc Contract provides that American Heritage and OTS will pay LeBlanc for work that was performed by LeBlanc on behalf of and for the benefit of American Heritage and OTS.

### 448.

American Heritage and OTS have failed to pay LeBlanc for work performed on approximately half of all scheduled pay dates in 2015 and 2016.

### 449.

American Heritage's and OTS's failure to pay LeBlanc for work performed on approximately half of all scheduled pay dates in 2015 and 2016 constitutes a material breach of the LeBlanc Contract.

450.

As the direct and foreseeable result of this breach, LeBlanc has sustained and continues to sustain damages in an amount to be proved at trial.

## COUNT XI – QUANTUM MERUIT OF
## PLAINTIFF LEBLANC
### AS TO DEFENDANTS AMERICAN HERITAGE AND OTS

451.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

452.

In 2015 and 2016, LeBlanc served as a maintenance technician for American Heritage and OTS.

453.

LeBlanc's service as a maintenance technician for American Heritage and OTS as described above was valuable to American Heritage and OTS

454.

American Heritage and OTS requested LeBlanc's service as a maintenance technician.

455.

American Heritage and OTS knowingly accepted LeBlanc's service as a maintenance technician.

456.

The receipt of LeBlanc's services as a maintenance technician for American Heritage without compensation would be unjust.

457.

LeBlanc expected to be compensated at the time he provided his services as a maintenance technician to American Heritage and OTS.

458.

LeBlanc is entitled to a recover from American Heritage and OTS, jointly and severally, the reasonable value of the services he provided as a maintenance technician for American Heritage, in an amount to be determined at trial.

## COUNT XII- PROMISSORY ESTOPPEL OF
## PLAINTIFF LEBLANC
## AS TO DEFENDANTS AMERICAN HERITAGE AND OTS

459.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

460.

American Heritage and OTS promised to pay LeBlanc in return for LeBlanc's service as a maintenance technician for them.

461.

American Heritage and OTS should have reasonably expected that LeBlanc would induce action in reliance of said promise, *i.e.,* serve as maintenance technician for American Heritage and OTS.

462.

American Heritage's and OTS's promise induced LeBlanc to act in reliance thereof, *i.e.,* to serve as a maintenance technician for American Heritage and OTS, to his detriment.

463.

LeBlanc's service as a maintenance technician for American Heritage and OTS conferred a benefit on American Heritage and OTS.

464.

American Heritage and OTS failed to pay LeBlanc in accordance with their promise.

465.

LeBlanc relied on American Heritage's and OTS's promise.

466.

LeBlanc's reliance on American Heritage's and OTS's promise was reasonable.

467.

Injustice can only be avoided by enforcement of American Heritage's and OTS's promise.

468.

LeBlanc is entitled to a recover from American Heritage and OTS, jointly and severally, the reasonable value of the services he provided as a maintenance technician for American Heritage and OTS, in an amount to be determined at trial.

## COUNT XIII

## FAILURE TO PAY MINIMUM WAGE TO PLAINTIFF SHEETZ

469.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

470.

At all times material hereto, Sheetz has been an employee covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

471.

During 2015 and 2016, Defendants failed to compensate Sheetz at an hourly rate equal to or above the minimum wage as established in accordance with the FLSA.

472.

During 2015 and 2016, Defendants willfully failed to compensate Sheetz at an hourly rate equal to or above the minimum wage as established in accordance with the FLSA.

473.

Sheetz is entitled to payment of minimum wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

474.

As a result of the underpayment of minimum wages as alleged above, Sheetz is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

475.

As a result of the underpayment of minimum wages, Defendants are liable to Sheetz for his litigation costs, including his reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT XIV
### FAILURE TO PAY OVERTIME TO PLAINTIFF SHEETZ

476.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

477.

At all times material hereto, Sheetz has been an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

478.

During the Relevant Time Period, Sheetz regularly worked in excess of forty (40) hours each week.

479.

Defendants failed to pay Sheetz at one and one half times his regular rate for work in excess of forty (40) hours in any week during the Relevant Time Period.

480.

Defendants willfully failed to pay Sheetz at one and one half times his regular rate for work in excess of forty (40) hours in any week during the Relevant Time Period.

481.

Sheetz is entitled to payment of due but unpaid overtime in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

482.

As a result of the underpayment of overtime compensation as alleged above, Sheetz is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

483.

As a result of the underpayment of overtime compensation as alleged above, Sheetz is entitled to his litigation costs, including his reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT XV - BREACH OF CONTRACT WITH PLAINTIFF SHEETZ
## AS TO DEFENDANTS AMERICAN HERITAGE AND OTS

### 484.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

### 485.

Sheetz, American Heritage and OTS were parties to a contract of employment (hereafter "the Sheetz Contract") during the four years immediately preceding this action.

### 486.

The Sheetz Contract provided that American Heritage and OTS would pay Sheetz for work that was performed by Sheetz on behalf of and for the benefit of American Heritage.

### 487.

American Heritage and OTS have failed to pay Sheetz for work performed on approximately half of all scheduled pay dates in 2015 and 2016.

### 488.

American Heritage's and OTS's failure to pay Sheetz for work performed on approximately half of all scheduled pay dates in 2015 and 2016 constitutes a material breach of the Sheetz Contract.

489.

As the direct and foreseeable result of this breach, Sheetz has sustained and continues to sustain damages in an amount to be proved at trial.

## COUNT XVI – QUANTUM MERUIT OF
## PLAINTIFF SHEETZ
## AS TO DEFENDANTS AMERICAN HERITAGE AND OTS

490.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

491.

In 2015 and 2016, Sheetz served as a range safety officer and firearms coach for American Heritage and OTS.

492.

Sheetz's service as a range safety officer and firearms coach for American Heritage and OTS as described above was valuable to American Heritage and OTS.

493.

American Heritage and OTS requested Sheetz's service as a range safety officer and firearms coach.

494.

American Heritage and OTS knowingly accepted Sheetz's service as a range safety officer and firearms coach.

495.

The receipt of Sheetz's services as a range safety officer and firearms coach for American Heritage and OTS without compensation would be unjust.

496.

Sheetz expected to be compensated at the time he provided his services as a range safety officer and firearms coach to American Heritage and OTS.

497.

Sheetz is entitled to a recover from American Heritage and OTS, jointly and severally, the reasonable value of the services he provided as a range safety officer and firearms coach for American Heritage and OTS, in an amount to be determined at trial.

## COUNT XVII - PROMISSORY ESTOPPEL OF
## PLAINTIFF SHEETZ
## AS TO DEFENDANTS AMERICAN HERITAGE AND OTS

498.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

499.

In 2015 and 2106, American Heritage and OTS promised to pay Sheetz in return for his service as a range safety officer and firearms coach for them.

500.

American Heritage and OTS should have reasonably expected that Sheetz would induce action in reliance of said promise, i.e., serve as a range safety officer and firearms coach for American Heritage and OTS.

501.

American Heritage's and OTS's promise induced Sheetz to act in reliance thereof, *i.e.,* to serve as a range safety officer and firearms coach for American Heritage and OTS, to his detriment.

502.

Sheetz's service as a range safety officer and firearms coach for American Heritage conferred a benefit on American Heritage and OTS.

503.

American Heritage and OTS failed to pay Sheetz in accordance with their promise.

504.

Sheetz relied on American Heritage's and OTS's promise.

505.

Sheetz's reliance on American Heritage's and OTS's promise was reasonable.

506.

Injustice can only be avoided by enforcement of American Heritage's and OTS's promise.

507.

Sheetz is entitled to a recover from American Heritage and OTS, jointly and severally, the reasonable value of the services he provided as a range safety officer and firearms coach for American Heritage and OTS, in an amount to be determined at trial.

## COUNT XVIII

## FAILURE TO PAY MINIMUM WAGE TO PLAINTIFF WILSON

508.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

509.

At all times material hereto, Wilson has been an employee covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

510.

During 2015 and 2016, Defendants failed to compensate Wilson at an hourly rate equal to or above the minimum wage as established in accordance with the FLSA.

511.

During 2015 and 2016, Defendants willfully failed to compensate Wilson, at an hourly rate equal to or above the minimum wage as established in accordance with the FLSA.

512.

Wilson is entitled to payment of minimum wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

513.

As a result of the underpayment of minimum wages as alleged above, Wilson is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

514.

As a result of the underpayment of minimum wages, Defendants are liable to Wilson for his litigation costs, including his reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT XIX
### FAILURE TO PAY OVERTIME TO PLAINTIFF WILSON

515.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

516.

At all times material hereto, Wilson has been an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

517.

During his employment with Defendants, Wilson regularly worked in excess of forty (40) hours each week.

518.

Defendants failed to pay Wilson at one and one half times his regular rate for work in excess of forty (40) hours in any week during the Relevant Time Period.

519.

Defendants willfully failed to pay Wilson at one and one half times his regular rate for work in excess of forty (40) hours in any week during the Relevant Time Period.

520.

Wilson is entitled to payment of due but unpaid overtime compensation in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

521.

As a result of the underpayment of overtime compensation as alleged above, Wilson is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

522.

As a result of the underpayment of overtime compensation as alleged above, Wilson is entitled to his litigation costs, including his reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT XX
## FRAUDULENT FILING OF TAX INFORMATION RETURNS (26 U.S.C. § 7434) REGARDING PLAINTIFF WILSON

523.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

524.

In 2016, Defendants intentionally, willfully, and fraudulently composed and filed a fraudulent W2 Form with the IRS which materially misrepresented the amount of compensation paid to Wilson in 2015 and all corresponding deductions.

525.

As a consequence of Defendants' willful filing of fraudulent tax information returns, Wilson is entitled to recover damages from Defendants, jointly and severally, up to and including any actual damages sustained, or in any event not less than $5,000 per fraudulent filing, as well as his costs of litigation including his reasonable attorneys' fees, pursuant to 26 U.S.C. § 7434.

## COUNT XXI - BREACH OF CONTRACT WITH PLAINTIFF WILSON AS TO DEFENDANTS AMERICAN HERITAGE AND OTS

526.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

527.

Wilson, American Heritage and OTS have been parties to a contract of employment (hereafter "the Wilson Contract") during the four years immediately preceding this action.

528.

The Wilson Contract provided that American Heritage and OTS would pay Wilson for work that was performed by Wilson on behalf of and for the benefit of American Heritage and OTS.

529.

American Heritage and OTS have failed to pay Wilson on approximately half of scheduled pay dates in 2015 and 2016.

530.

American Heritage and OTS failure to pay Wilson on approximately half of scheduled pay dates in 2015 and 2016 constitutes a material breach of the Wilson Contract.

531.

As the direct and foreseeable result of this breach, Wilson has sustained and continues to sustain damages in an amount to be proved at trial.

## COUNT XXII – QUANTUM MERUIT OF PLAINTIFF WILSON AS TO DEFENDANTS AMERICAN HERITAGE AND OTS

532.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

533.

During 2015 and 2016, Wilson served as a range coordinator and salesman for American Heritage and OTS.

534.

Wilson's service as a range coordinator and salesman for American Heritage and OTS as described above was valuable to American Heritage and OTS.

535.

American Heritage and OTS requested Wilson's service as a range coordinator and salesman.

536.

American Heritage and OTS knowingly accepted Wilson's service as a range coordinator and salesman.

537.

The receipt of Wilson's services as a range coordinator and salesman for American Heritage and OTS without compensation would be unjust.

538.

Wilson expected to be compensated at the time he provided his services as a range coordinator and salesman to American Heritage and OTS.

539.

Wilson is entitled to a recover from American Heritage and OTS, jointly and severally, the reasonable value of the services he provided as a range coordinator

and salesman for American Heritage and OTS, in an amount to be determined at trial.

## COUNT XXIII - PROMISSORY ESTOPPEL OF
## PLAINTIFF WILSON
## AS TO DEFENDANTS AMERICAN HERITAGE AND OTS

540.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

541.

During 2015 and 2016, American Heritage and OTS promised to pay Wilson in return for his service as a range coordinator and salesman for them.

542.

American Heritage and OTS should have reasonably expected that Wilson would induce action in reliance of said promise, i.e., serve as a range coordinator and salesman for American Heritage and OTS.

543.

American Heritage's and OTS's promise induced Wilson to act in reliance thereof, i.e., to serve as a range coordinator and salesman for American Heritage and OTS, to his detriment.

544.

Wilson's service as a range coordinator and salesman for American Heritage and OTS conferred a benefit on American Heritage and OTS.

545.

American Heritage and OTS failed to pay Wilson in accordance with their promise.

546.

Wilson relied on American Heritage's and OTS's promise.

547.

Wilson's reliance on American Heritage's and OTS's promise was reasonable.

548.

Injustice can only be avoided by enforcement of American Heritage's and OTS's promise.

549.

Wilson is entitled to a recover from American Heritage and OTS, jointly and severally, the reasonable value of the services he provided as a range coordinator and salesman for American Heritage, in an amount to be determined at trial.

## COUNT XXIV
## FAILURE TO PAY MINIMUM WAGE TO PLAINTIFF YOUNG

550.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

551.

At all times material hereto, Young has been an employee covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

552.

During 2015 and 2016, Defendants failed to compensate Young at an hourly rate equal to or above the minimum wage as established in accordance with the FLSA.

553.

During 2015 and 2016, Defendants willfully failed to compensate Young at an hourly rate equal to or above the minimum wage as established in accordance with the FLSA.

554.

Young is entitled to payment of minimum wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

555.

As a result of the underpayment of minimum wages as alleged above, Young is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

556.

As a result of the underpayment of minimum wages, Defendants are liable to Young for his litigation costs, including his reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT XXV
## FAILURE TO PAY OVERTIME TO PLAINTIFF YOUNG

557.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

558.

At all times material hereto, Young has been an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

559.

During the Relevant Time Period, Young regularly worked in excess of forty (40) hours each week.

560.

Defendants failed to pay Young at one and one half times his regular rate for work in excess of forty (40) hours in any week during the Relevant Time Period.

561.

Defendants willfully failed to pay Young at one and one half times his regular rate for work in excess of forty (40) hours in any week during the Relevant Time Period.

562.

Young is entitled to payment of due but unpaid overtime compensation in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

563.

As a result of the underpayment of overtime compensation as alleged above, Young is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

564.

As a result of the underpayment of overtime compensation as alleged above, Young is entitled to his litigation costs, including his reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT XXVI–
## FRAUDULENT FILING OF TAX INFORMATION RETURNS (26 U.S.C. § 7434) REGARDING YOUNG

565.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

566.

In 2016, Defendants intentionally, willfully, and fraudulently composed and filed a fraudulent W2 Form with the IRS which materially misrepresented the amount of compensation paid to Young in 2015 and all corresponding deductions.

567.

As a consequence of Defendants' willful filing of fraudulent tax information returns, Young is entitled to recover damages from Defendants, jointly and severally, up to and including any actual damages sustained, or in any event not less than $5,000 per fraudulent filing, as well as his costs of litigation including his reasonable attorneys' fees, pursuant to 26 U.S.C. § 7434.

## COUNT XXVII - BREACH OF CONTRACT WITH PLAINTIFF YOUNG AS TO DEFENDANTS AMERICAN HERITAGE AND OTS

568.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

569.

Young, American Heritage and OTS have been parties to a contract of employment (hereafter "the Young Contract") at all times relevant to within action.

570.

The Young Contract provided that American Heritage and OTS would pay Young for work that was performed by Young on behalf of and for the benefit of American Heritage.

571.

American Heritage and OTS failed to pay Young on approximately half of the scheduled pay dates in 2015 and 2016.

572.

American Heritage's and OTS's failure to pay Young on approximately half of scheduled pay dates in 2015 and 2016 constitutes a material breach of the Contract.

573.

As the direct and foreseeable result of this breach, Young has sustained and continues to sustain damages in an amount to be proved at trial.

## COUNT XXVIII – QUANTUM MERUIT OF PLAINTIFF YOUNG AS TO DEFENDANTS AMERICAN HERITAGE AND OTS

574.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

575.

During 2015 and 2016, Young served as an ATF compliance officer for American Heritage and OTS.

576.

Young's service as an ATF compliance officer for American Heritage and OTS as described above was valuable to American Heritage and OTS.

577.

American Heritage and OTS requested Young's service as an ATF compliance officer.

578.

American Heritage and OTS knowingly accepted Young's service as an ATF compliance officer.

579.

The receipt of Young's services as an ATF compliance officer for American Heritage and OTS without compensation would be unjust.

580.

Young expected to be compensated at the time he provided his services as an ATF compliance officer to American Heritage and OTS.

581.

Young is entitled to a recover from American Heritage and OTS, jointly and severally, the reasonable value of the services he provided as an ATF compliance officer for American Heritage and OTS, in an amount to be determined at trial.

## COUNT XXIX - PROMISSORY ESTOPPEL OF
## PLAINTIFF YOUNG
## AS TO DEFENDANTS AMERICAN HERITAGE AND OTS

582.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

583.

During 2015 and 2016, American Heritage and OTS promised to pay Young in return for his service as an ATF compliance officer for them.

584.

American Heritage and OTS should have reasonably expected that Young would induce action in reliance of said promise, i.e., serve as an ATF compliance officer for American Heritage and OTS.

585.

American Heritage's and OTS's promise induced Young to act in reliance thereof, *i.e.,* to serve as an ATF compliance officer for American Heritage and OTS, to his detriment.

586.

Young's service as an ATF compliance officer for American Heritage and OTS conferred a benefit on American Heritage and OTS.

587.

American Heritage and OTS failed to pay Young in accordance with their promise.

588.

Young relied on American Heritage's and OTS's promise.

589.

Young's reliance on American Heritage's promise was reasonable.

590.

Injustice can only be avoided by enforcement of American Heritage's and OTS's promise.

591.

Young is entitled to a recover from American Heritage and OTS, jointly and severally, the reasonable value of the services he provided as an ATF compliance officer for American Heritage and OTS, in an amount to be determined at trial.

WHEREFORE, Plaintiffs respectfully pray:

1.  That Plaintiffs be awarded amounts to be determined at trial against all Defendants, jointly and severally, in unpaid minimum wages due under the FLSA, plus additional like amounts in liquidated damages;

2. That Plaintiffs be awarded amounts to be determined at trial against all Defendants, jointly and severally, in unpaid overtime compensation due under the FLSA, plus additional like amounts in liquidated damages;

3. That Plaintiffs be awarded their actual damages and not less than $5,000 against all Defendants, jointly and severally, for each of fraudulent tax information returns filed with respect to them by Defendants;

4. That Plaintiffs have and recover judgment against Defendants American Heritage and OTS, jointly and severally, for the pendent State claims herein asserted in amounts to be proved at trial;

5. That Plaintiffs be awarded costs of litigation, including their reasonable attorneys' fees from Defendants; and

6. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

DELONG CALDWELL BRIDGERS
FITZPATRICK & BENJAMIN, LLC

3100 CENTENNIAL TOWER          /s/CHARLES R. BRIDGERS
101 MARIETTA STREET            CHARLES R. BRIDGERS
ATLANTA, GEORGIA 30303         GA. BAR NO. 080791
(404) 979-3171
(404) 979-3170 (f)             /s/ KEVIN D. FITZPATRICK, JR.
kevin.fitzpatrick@dcbflegal.com  KEVIN D. FITZPATRICK, JR.
charlesbridgers@dcbflegal.com    GA. BAR NO. 262375

                               COUNSEL FOR PLAINTIFFS